Citation Nr: 1522708 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 10-43 540 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to a compensable initial rating for service-connected left knee strain.

2. Entitlement to a compensable initial rating for service-connected right knee strain, with history of medial meniscus tear.

3. Entitlement to an initial rating in excess of 10 percent for service-connected gastroesophageal reflux disease (GERD), with hiatal hernia.

4. Entitlement to a compensable initial rating prior to February 21, 2014, and in excess of 20 percent thereafter, for service-connected left (minor) carpal tunnel syndrome.

5. Entitlement to an initial rating in excess of 10 percent prior to May 4, 2010, and in excess of 20 percent thereafter, for service-connected right (major) shoulder bursitis with right biceps tendinitis.


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

W.L. Puchnick, Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from April 1985 to February 2006. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 Decision Review Officer (DRO) decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. Said decision granted service connection and assigned noncompensable ratings effective March 1, 2006 (the day following the Veteran's discharge from service) for: (1) left knee strain; (2) right knee strain; (3) GERD; (4) left carpal tunnel syndrome; and (5) chronic right shoulder bursitis. That decision also granted service connection and assigned a 10 percent rating (the maximum schedular evaluation) for recurrent tinnitus. However, the Veteran did not express disagreement with that determination. 

In a subsequent August 2010 Rating Decision, the RO granted a higher rating for GERD of 10 percent, effective March 29, 2010. An October 2010 DRO decision assigned an effective date of March 1, 2006, for the 10 percent rating for GERD. 

The October 2010 DRO decision granted a higher rating of 10 percent for chronic right shoulder bursitis, effective March 1, 2006. An August 2014 DRO decision granted a higher rating of 20 percent for right shoulder bursitis with right biceps tendinitis, effective May 4, 2010, in addition to a higher rating of 20 percent for left carpal tunnel syndrome, effective February 21, 2014. 

This appeal was processed using both the "Virtual VA" (VVA) and the "Veterans Benefits Management System" (VBMS) paperless claims processing systems. Accordingly, any future consideration of the Veteran's case should take into consideration the existence of this electronic record. 

The issues of (1) entitlement to an effective date prior to May 4, 2010, for the 20 percent rating for service-connected right shoulder bursitis with right biceps tendinitis and (2) entitlement to an effective date prior to February 21, 2014, for a 20 percent rating for service-connected left carpal tunnel syndrome have been raised by the record in a VA Form 21-4138, Statement in Support of Claim, received in September 2014, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 

The issues of (1) entitlement to a compensable initial rating for service-connected left knee strain and (2) entitlement to a compensable initial rating for service-connected right knee strain, with history of medial meniscus tear, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the entire initial rating period on appeal, the Veteran's GERD with hiatal hernia was manifested by difficulty sleeping, dysphasia (difficulty swallowing), epigastric distress, nausea, pyrosis (heartburn), reflux, and regurgitation, accompanied by substernal arm or shoulder pain, productive of considerable impairment to health, but not resulting in severe impairment of health. 

2. For the rating period prior to February 21, 2014, the Veteran's left (minor) carpal tunnel syndrome was manifested by subjective complaints of mild numbness; there was no objective evidence of paralysis of any nerve.

3. For the rating period since February 21, 2014, the Veteran's left (minor) carpal tunnel syndrome has been manifested by no more than mild incomplete paralysis of the median and ulnar nerves. 

4. For the rating period prior to January 29, 2008, the Veteran's right (major) shoulder bursitis with right biceps tendinitis has been manifested by complaints of pain, weakness, stiffness, fatigue, and flare-ups; objectively, his right arm had motion to greater than shoulder level with no evidence of ankylosis of the scapulohumeral articulation, non-union of the clavicle with loose movement, or malunion of the humerus. 

5. For the rating period since January 29, 2008, the Veteran's right (major) shoulder bursitis with right biceps tendinitis has been manifested by complaints of pain, weakness, stiffness, fatigue, and flare-ups; objectively, his right arm had limitation of motion at the shoulder level with no evidence of ankylosis of the scapulohumeral articulation, recurrent dislocation of the scapulohumeral joint or malunion of the humerus, or dislocation or non-union of the clavicle or scapula. 


CONCLUSIONS OF LAW

1. For the entire initial rating period on appeal, the criteria for a 30 percent rating, but no higher, for GERD with hiatal hernia have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.3, 4.7, 4.20, 4.114, Diagnostic Code 7346 (2014).

2. For the rating period prior to February 21, 2014, the criteria for a compensable rating for left (minor) carpal tunnel syndrome have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.3, 4.7, 4.20, 4.124a, Diagnostic Codes 8513, 8515, 8516 (2014).

3. For the rating period since February 21, 2014, the criteria for a 20 percent rating for left (minor) carpal tunnel syndrome have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.3, 4.7, 4.20, 4.124a, Diagnostic Codes 8513, 8515, 8516 (2014).

4. For the rating period prior to January 29, 2008, the criteria for a rating in excess of 10 percent for right (major) shoulder bursitis with right biceps tendinitis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.3, 4.7, 4.20, 4.71a, Diagnostic Codes 5003, 5200-5203 (2014).

5. For the rating period since January 29, 2008, the criteria for a rating in excess of 20 percent for right (major) shoulder bursitis with right biceps tendinitis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321(b), 4.1, 4.3, 4.7, 4.20, 4.71a, Diagnostic Codes 5003, 5200-5203 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2014). Upon receipt of a complete or substantially-complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). 

As this issues on appeal concern the initial ratings assigned for GERD, left carpal tunnel syndrome, and right shoulder bursitis-and come before the Board on appeal from a Rating Decision which also granted service connection-there can be no prejudice to the Veteran from any alleged failure to give adequate 38 U.S.C.A. § 5103(a) notice for the service-connection claims. See Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 115-17 (2007); VAOPGCPREC 8-2003 (Dec. 22, 2003) (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement). 

The Board further finds that VA has complied with the duty to assist by aiding in obtaining evidence. It appears that all known and available records relevant to the pending appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's service treatment records (STRs), as well as VA and non-VA medical treatment records. The Veteran was also afforded VA medical examinations in August 2006, May 2010, and February 2014. The VA examinations were adequate, because they were each performed by a medical professional based upon a review of the claims file and include a solicitation of history and symptomatology from the Veteran as well as a thorough examination including opinions and accompanying rationales. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

Finally, the Board is not aware of, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. Since VA has satisfied its duties to notify and assist, any additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal. 

II. Applicable Law and Regulations

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule). The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a "staged rating." See Fenderson v. West, 12 Vet.App 119, 126 (1999). The Court has also held that staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Id. The Board has considered whether staged ratings are for consideration, and finds that with respect to the Veteran's service-connected right shoulder bursitis with right biceps tendinitis, staged ratings beyond those awarded by the RO (as will be explained below) are warranted. 

In rendering a decision on appeal the Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. at 308-10. 

In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss may be due to due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40 (2014). Pain on movement, swelling, deformity, or atrophy of disuse are relevant factors in regard to joint disability. 38 C.F.R. § 4.45 (2014). Painful, unstable, or malaligned joints, due to a healed injury, are entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59 (2014). 

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis. However 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). The Court also has held that "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Rather, pain, may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination [, or] endurance." Id., quoting 38 C.F.R. § 4.40. 

Pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran's service-connected disability. 38 C.F.R. § 4.14 (2014). However, it is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several evaluations under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

III. Analysis of Service-Connected Disabilities

1. Entitlement to an Initial Rating in Excess of 10 Percent for GERD

The Veteran filed a claim for service connection for acid reflux in June 2006. 
STRs show that the Veteran presented with complaints of mid-epigastric pain in January 1997. X-ray examination showed no diagnostic abnormality. A summary of care shows prescription of Pepcid for GERD in January 1997. GERD was assessed in January 1997, rule out peptic ulcer disease (PUD). Also in January 1997, the Veteran complained of epigastric pain. Upper gastrointestinal (UGI) series was normal. In December 2002, the Veteran was assessed with reflux esophagitis. Records from Beale Air Force Base (Beale) show that the Veteran was treated for GERD in September 2005. The diagnosis at that time was esophageal reflux. A November 2005 Beale Family Practice evaluation assessed esophageal reflux, stable. 

During VA examination conducted in August 2006, the Veteran reported an occasional acid taste in his mouth, but no reflux. Examination revealed the abdomen was soft, nontender, without organomegaly or masses. The Veteran reported that he did not reflux food content into his mouth, and he noted no problem associated with this condition as long as he took his medication (Aciphex) and watched his diet. The diagnosis with hiatal hernia with GERD. 

As noted, the November 2007 DRO decision granted service connection and assigned a noncompensable rating effective March 1, 2006, for GERD. In March 2010, the Veteran requested an increased rating for GERD, claiming that it had gotten worse. 

The Veteran attended a VA esophagus/hiatal hernia examination in May 2010. He used Omeprazole twice daily, and took 5 to 6 Tums per day. He denied dysphagia for solids or liquids and pyrosis. He complained of epigastric burning discomfort and burning in his esophagus. There was no substernal chest or arm pain. He denied hematemesis or melena. The Veteran had reflux of acid taste into his mouth when he was lying down at night and in the early morning. He was nauseated but forced himself to concentrate and not vomit. He did not regurgitate food contents, but each night he had an acid taste in his mouth. He said that in the morning he would get yellow bile in his mouth, but no food contents. The Veteran could not lie down for 2 hours after eating. He had no hospitalizations or surgery for hiatal hernia or GERD, and no history of esophageal trauma. He reported he had to manage his diet and avoid certain foods. Examination showed the abdomen to be soft and nontender, without organomegaly or masses. No aortic bruit was audible, no pulsatile mass was felt. The examiner diagnosed hiatal hernia with GERD.

In an August 2010 Rating Decision, the RO granted an increased rating of 10 percent for GERD, effective March 29, 2010 (the date of receipt of the Veteran's claim for an increased rating). An October 2010 DRO decision assigned a 10 percent rating for GERD with hiatal hernia, effective March 1, 2006, on the basis of de novo review. The DRO explained that, while service connection for hiatal hernia was warranted, because the August 2006 VA examination diagnosed hiatal hernia with GERD, the two disabilities were evaluated together, because separate ratings were not warranted for each disorder. The 10 percent evaluation was assigned pursuant to 38 C.F.R. § 4.114, Diagnostic Code 7346 (hiatal hernia). 

GERD is not among the listed conditions in the Rating Schedule. When an unlisted condition is encountered, it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20. The Board finds that GERD is most closely analogous to a hiatal hernia in terms of symptomatology and resulting disability pictures.

Notably (as found by the DRO in October 2010), separate evaluations for GERD and hiatal hernia are prohibited by section 4.114. Specifically, there is no diagnosis of a GI disability which warrants a separate compensable evaluation. Rather, all current GI disabilities are encompassed within rating codes which may not be separately evaluated ("ratings under diagnostic codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348, inclusive will not be combined with each other."). 38 C.F.R. § 4.114. The Veteran has requested that he be granted service connection for hiatal hernia (see NOD/Form 9 received in January 2008). Although service connection has been granted for a hiatal hernia through the October 2010 DRO decision, a separate evaluation may not be assigned. Id. 

A 10 percent evaluation is warranted for a hiatal hernia with two or more of the symptoms required for a 30 percent evaluation which are of lesser severity than is required for a 30 percent evaluation. A 30 percent evaluation requires persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation accompanied by substernal, arm, or shoulder pain which is productive of considerable impairment of health. A 60 percent evaluation requires symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. 

In his VA Form 9 Substantive Appeal received in October 2010, the Veteran requested an increased rating for GERD, claiming that he had problems with swallowing food (dysphasia), daily heartburn, regurgitation, pain in his shoulder and arm, and that he is unable to sleep lying flat. 

Upon VA esophageal conditions contract examination in February 2014, the examiner listed diagnoses of GERD and hiatal hernia. The Veteran reported symptoms of persistent epigastric distress, pyrosis (heartburn), reflux, nausea, and substernal arm or shoulder pain. The examiner found no other significant diagnostic test findings or results, determined that the Veteran's esophageal conditions did not impact his ability to work, and concluded no change was warranted to the diagnoses of hiatal hernia and GERD. 

The Board has reviewed the probative evidence of record, to include the Veteran's statements and evidentiary submissions. The evidence shows that, for the entire appeal period, an increased rating of 30 percent is warranted for the Veteran's GERD with hiatal hernia. This is so because the Board the evidence above reflects that the Veteran has all of the required symptoms for the 30 percent rating, including difficulty sleeping, dysphasia, epigastric distress, nausea, pyrosis (heartburn), reflux, and regurgitation, accompanied by substernal arm or shoulder pain, which were productive of considerable impairment to health, but not productive of severe impairment of health. Accordingly, the Board finds that the Veterans GERD with hiatal hernia symptoms more closely approximate the criteria for a 30 percent rating, rather than the 10 percent rating criteria.

However, an evaluation greater than 30 percent is not warranted for the Veteran's GERD with hiatal hernia. A maximum 60 percent evaluation is for application when the evidence demonstrates pain, vomiting, material weight loss and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health. While the Veteran has regularly complained of pain, there is no evidence that he experienced vomiting, material weight loss, hematemesis, melena, moderate anemia, or any other symptoms productive of severe impairment of health. As the Veteran's symptomatology more closely approximates the schedular criteria for a 30 percent evaluation rather than a 60 percent rating, an increased rating greater than 30 percent for GERD with hiatal hernia is not warranted.

For these reasons, the Board finds that the preponderance of the evidence weighs against the assignment of an initial rating in excess of 30 percent for GERD with hiatal hernia. The evidence of record supports the conclusion that the Veteran is not entitled to additional, higher compensation at any time during the appeal period. Hence, a rating in excess of 30 percent for GERD is not warranted. 38 C.F.R. §§ 4.3, 4.7; see Fenderson, 12 Vet. App. at 126. 

2. Entitlement to a Compensable Initial Rating Prior to February 21, 2014, and in Excess of 20 Percent Thereafter, for Left (Minor) Carpal Tunnel Syndrome

STRs show treatment for bilateral carpal tunnel syndrome on one occasion in December 2001, and treatment for right wrist only pain on several occasions. 
The November 2005 Beale Family Practice evaluation diagnosed history of bilateral wrist carpal tunnel syndrome. 

VA examination conducted in August 2006 revealed no tenderness to palpation and manipulation of the left hand and wrist. Range of motion of the wrist was full and painless, and grip strength was normal. Deep tendon reflexes of upper extremities were physiologic (2+), and muscle bulk and tone of upper extremities were normal. Both Tinel's and Phalen's tests were negative on the left. Although there was no objective finding of any disability associated with the claim, the Veteran reported subjective complaints of mild numbness in the left wrist. The VA examiner diagnosed mild carpal tunnel syndrome, right greater than left. Bilateral wrist carpal tunnel syndrome was assessed by Beale during May 2007 service reserve member's examination. 

As noted, the November 2007 DRO decision granted service connection and assigned a noncompensable rating effective March 1, 2006, for left carpal tunnel syndrome. 

The Veteran attended a VA peripheral nerves contract examination in February 2014. The examiner recorded a diagnosis of left carpal tunnel syndrome. The Veteran reported moderate intermittent pain, moderate paresthesias, and moderate numbness in the left upper extremity. Muscle strength in the left wrist was normal (5/5), and there was no muscle atrophy. Deep tendon reflex and sensory examinations were also normal. Regarding the median nerve, Phalen's sign was positive on the left, while Tinel's sign was negative. The left radial nerve was normal, while mild incomplete paralysis of the left median and left ulnar nerves was shown. The examiner determined that there were neither scars nor other pertinent physical findings or symptoms. The examiner determined that the functional impact upon the Veteran's ability to work was limited repetitive fine movement of the hands (precision tools, keyboard, driving) due to the carpal tunnel disability. Finally, the examiner found that no change was warranted in the diagnosis of left carpal tunnel syndrome. The diagnosis was mild incomplete paralysis. 

The August 2014 DRO decision granted an increased rating of 20 percent for left carpal tunnel syndrome, effective February 21, 2014 (the date of the VA examination). 

The Veteran was assigned disability ratings for his carpal tunnel syndrome in accordance with the provisions of 38 C.F.R. § 4.124a, Diagnostic Code 8513, as an unlisted condition. See 38 C.F.R. § 4.20. The Veteran's carpal tunnel syndrome of the left (minor) wrist is rated as noncompensably disabling prior to February 21, 2014, and as 20 percent disabling thereafter. 

Under Diagnostic Code 8513 (all radicular groups), for the minor wrist, a 20 percent rating requires mild incomplete paralysis. A 30 percent rating requires moderate incomplete paralysis. A 60 percent rating requires severe incomplete paralysis. An 80 percent disability rating requires complete paralysis. See 38 C.F.R. § 4.124a, Diagnostic Code 8513. The Veteran is right-hand dominant, as confirmed by VA examination in February 2014. 

After a review of the evidence, for the rating period prior to February 21, 2014, the Veteran's service connected left (minor) carpal tunnel syndrome more nearly approximates the criteria for a noncompensable rating, as the medical evidence shows subjective complaints of numbness but no objective findings of disability. Indeed, at the August 2006 VA examination, while the examiner diagnosed mild carpal tunnel syndrome, right greater than the left, there was no objective finding of any disability noted. 

However, upon VA examination in February 2014, the examiner diagnosed mild incomplete paralysis, as nerve testing showed mild incomplete paralysis of the left median and ulnar nerves. While Phalen's test was positive on the left, Tinel's sing was negative. The examiner determined that there were neither scars nor other pertinent physical findings or symptoms. Moreover, muscle strength in the left wrist was normal (5/5), and there was no muscle atrophy. Also, deep tendon reflex and sensory examinations were normal. The Board acknowledges that, while the Veteran reported mild intermittent pain, moderate paresthesias, and moderate numbness in the left upper extremity, objective manifestations did not show that he had moderate incomplete paralysis of the median and ulnar nerves. 

The Board has also considered rating the Veteran's service-connected left carpal tunnel disability under other pertinent Diagnostic Codes. As noted, February 2014 VA peripheral nerves examination revealed mild incomplete paralysis of the left median and left ulnar nerves, which was the basis for the assignment of a 20 percent rating for mild incomplete paralysis of the minor extremity under Diagnostic Code 8513 (all radicular groups). Examining the Diagnostic Code for the median nerve shows that a 10 percent rating is warranted for mild incomplete paralysis of the minor extremity pursuant to Diagnostic Code 8515. Under Diagnostic Code 8516, a 10 percent rating is warranted for mild incomplete paralysis of the ulnar nerve of the minor extremity. The assignment of two separate, 10 percent ratings under Diagnostic Codes 8515 and 8516 is of no greater advantage or benefit to the Veteran than his currently-assigned 20 percent rating under Diagnostic Code 8513. 

In conclusion, the evidence of record reveals manifestations consistent with a noncompensable disability rating for carpal tunnel syndrome prior to February 21, 2014, and a 20 percent rating, but no higher, thereafter. 38 C.F.R. §§ 4.3, 4.7; see Fenderson, 12 Vet. App. at 126. 

3. Entitlement to an Initial Rating in Excess of 10 Percent Prior to May 4, 2010, and in Excess of 20 Percent Thereafter, for Right (Major) Shoulder Bursitis with Right Biceps Tendinitis. 

STRs include complaints of right shoulder pain in October 1996. Examination revealed no pain with flexion, but increased pain with abduction. The assessment was muscle strain versus tendinitis. The Veteran complained of falling on his right shoulder one month previously, with continued pain, in November 1996. Examination of the right shoulder showed full range of motion, pain at 90 degrees flexion and abduction. The assessment was biceps tendinitis. STRs also show treatment for right shoulder pain in January 1999, which the Veteran had experienced over the preceding year. The diagnosis at that time was right deltoid spasm. Also in January 1999, the Veteran was assessed with deltoid strain versus subacromial bursitis. In September 2003, the Veteran was seen for complaints of right shoulder pain and difficulty lifting his arm. He was assessed with shoulder/post deltoid muscle fasciculations. Upon November 2005 examination, Beale Family Practice diagnosed tendinitis of the right shoulder with history of tendinitis, symptoms stable. 

The Veteran filed a claim for right shoulder bursitis /bicep tendinitis in June 2006. 

VA examination conducted in August 2006 noted complaints of chronic daily pain, rated as 4 through 8 on a scale of 1 to 10, with weakness, stiffness, fatigue, and lack of endurance, but no swelling, heat, redness, or instability. The pain increased with cold weather and excess arm or shoulder activity. The Veteran complained of daily flare-ups lasting 1 to 2 hours, depending upon his activities. 

Examination revealed no heat, redness, or soft tissue swelling about the right shoulder. Deep tendon reflexes of upper extremities were physiologic (2+). X-ray was unremarkable. Muscle bulk and tone of upper extremities were normal. Right shoulder range of motion was full, recorded as 180 degrees of forward flexion, 180 degrees of abduction, 90 degrees of internal rotation, 90 degrees of external rotation and 45 degrees of adduction. There was mild discomfort on the dorsal aspect of the top of the right shoulder with range of motion. The VA examiner stated there would be a 20-degree loss of forward flexion and abduction due to pain on repetitive use. Therefore, forward flexion and abduction would be reduced from 180 degrees to 160 degrees during flare-ups of pain. There was no true excess fatigability, weakness, lack of endurance or incoordination of the Veteran's right shoulder. He was diagnosed with chronic right shoulder bursitis. 

Past right shoulder tendinitis was diagnosed by Beale during May 2007 service reserve member's examination. An MRI of the right shoulder conducted by Yuba City Advanced Imaging in November 2007 listed impressions of: (1) partial tears of the supraspinatus tendon articular surface at the greater tuberosity; (2) partial tears are also present in the superior subscapularis tendon and infraspinatus tendon; (3) reactive subacromial-subdeltoid bursitis; and (4) mild osteoarthrosis of the acromioclavicular (AC) joint with subchondral edema.

As noted, the November 2007 DRO decision granted service connection and assigned a noncompensable rating effective March 1, 2006, for chronic right shoulder bursitis. Right shoulder tendinitis was diagnosed by Beale in December 2007.

In his NOD received in January 2008, the Veteran contended that the August 2006 VA examination of his right shoulder was inadequate. He reported that he could not lift his arm to 45 degrees from his side. 

Private records from Sutter North Medical Group show diagnoses of right shoulder impingement syndrome with improving arthrofibrosis and improving inflammation beginning in January 2008. Physical examination at that time showed that the Veteran was able to actively elevate the right shoulder closer to 140 or 150 degrees. At 90 degrees of abduction he could externally rotate close to 90 degrees with some pain at the extreme and these are both improved since the last visit. His rotator cuff strength was 5/5 and he has very little tenderness about the shoulder. He could reach np behind his back to the T12 vertebra.

The Veteran received physical therapy at Beale Air Force Base for his right shoulder from January 2008 to March 2008. He was assessed with join pain, localized in the shoulder, with cuff involvement and capsulitis, in January 2008. Shoulder tendinitis with possible osteoarthritis was assessed during evaluation at Beale in April 2010. 

Evaluation by private orthopedist Amber L. Chatwin of Sutter North in May 2010 for complaints of right shoulder pain, revealed strength of 5/5, no instability, forward elevation and abduction of 180 degrees, external rotation of 30 degrees, and internal rotation of 80 degrees. The diagnosis was right shoulder pain impingement, supraspinous tendinopathy. At that time, the Veteran received a corticosteroid injection in his right shoulder. 

The October 2010 DRO decision granted an increased rating of 10 percent for chronic right shoulder bursitis, effective March 1, 2006. In his October 2010 VA Form 9, the Veteran contended an increased rating was warranted for his right shoulder due to pain upon movement of the right arm past 60 degrees, with decreased limitation of motion due to pain. 

The Veteran presented for VA contract examination of the right shoulder in February 2014. The diagnoses included bilateral shoulder bursitis and biceps tendinitis. The Veteran reported that he slipped and fell on his right shoulder during service ini 1996, and that he was right handed. He reported flare-ups with overhead reaching or lifting, and that he restricted himself with carrying more than 20 pounds, driving 2 hours, and using the keyboard for 1 hour. Right shoulder flexion was to 110 degrees, with painful motion at 100 degrees, while right shoulder abduction was to 100 degrees, and to 90 degrees with pain. Right shoulder internal rotation was to 70 degrees, with no evidence of painful motion, and right shoulder external rotation was to 60 degrees, with painful motion at 50 degrees. Following repetitive-use testing, right shoulder flexion was to 100 degrees, abduction to 90 degrees, and internal rotation to 60 degrees. 

The Board notes that there is a typographical error on the examination form, at (5)(b) (Page 4 of 11). At the bottom of the page, there is a duplicate heading of "Select where abduction ends." However, the heading should properly read "Select where external rotation ends." Such heading is proper, because the checkmark boxes range from 0 to 90 degrees (while abduction is 0 to 180 degrees), and such would correspond with the headings under "Initial range of motion (ROM) measurements" found at (4)(a) (Page 2 off 11). 

There was no decrease in range of motion due to pain. However, the Veteran exhibited additional limitation in range of motion following repetitive use, evidenced by functional loss due to less movement than normal and pain upon movement. Pain was said to limit functional ability during flare-ups, with an additional loss of 10 degrees in all ranges of motion. Muscle strength testing was normal (5/5) in abduction and forward flexion. There was no ankylosis of the shoulder joint shown, nor recurrent dislocation (subluxation) of the scapulohumeral joint. Nor was there impairment of the clavicle or scapula. There were no scars or other residual signs or symptoms due to surgery. No documented arthritis was indicated, and the impact of the Veteran's left shoulder condition upon his ability to work was that he was restricted from overhead reaching and lifting. The examiner found that there was no change to the VA established diagnoses, and opined that the Veteran had a right bicep condition related to his right shoulder bursitis. 

The August 2014 DRO decision assigned a 20 percent rating for right shoulder bursitis with right biceps tendinitis (previously rated as chronic right shoulder bursitis), effective May 4, 2010 (the date of the Veteran's corticosteroid injection at Sutter North). 

A. Initial Rating in Excess of 10 Percent Prior to May 4, 2010

The Veteran was assigned a 10 percent disability rating for his service-connected right shoulder bursitis prior to May 4, 2010, pursuant to Diagnostic Codes 5019-5203. Bursitis is rated under Diagnostic Code 5019, which states that it will be rated on limitation of motion of the affected parts as degenerative arthritis (Diagnostic Code 5003). 

Hyphenated diagnostic codes are used when a rating under one Diagnostic Code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2013). Diagnostic Code 5203 refers to impairment of the clavicle or scapula. Because of the nature of the Veteran's disability, the Board finds that the rating criteria applied by the RO are appropriate. Pernorio v. Derwinski, 2 Vet. App. 625 (1992); 38 C.F.R. §§ 4.20, 4.21 (2014). Other potentially applicable Diagnostic Codes are Diagnostic Code 5201 (limitation of motion of the arm) and Diagnostic Code 5202 (other impairment of the humerus). 

The Board can identify no more appropriate diagnostic codes and the Veteran has not identified any. Butts v. Brown, 5 Vet. App. 532 (1993). Accordingly, the Board will proceed with an analysis of the Veteran's disability under these Diagnostic Codes. As the Veteran is right handed, his shoulder disability will be evaluated under the rating criteria for the major joint. 

Diagnostic Code 5203 provides for a 10 percent rating for impairment of the clavicle or scapula when there is malunion or nonunion without loose movement. A maximum 20 percent rating is assigned for impairment of the clavicle or scapula when there is nonunion with loose movement or dislocation. The disability may also be rated on impairment of function of the contiguous joint. 38 C.F.R. § 4.71a, Diagnostic Code 5203 (2014). 

As Diagnostic Code 5203 provides that impairment of the clavicle or scapula may be rated on impairment of function of the contiguous joint, the regulatory criteria in Diagnostic Code 5201, the Diagnostic Code for limitation of motion of the arm, are also applicable. Under Diagnostic Code 5201, a 20 percent rating is warranted where motion of the major arm is limited at shoulder level. A 30 percent rating is warranted when motion of the major arm is limited midway between the side and shoulder level. A maximum 40 percent rating is warranted where motion of the major arm is limited to 25 degrees from the side. 38 C.F.R. § 4.71a, Diagnostic Code 5201 (2014).

Normal forward flexion of the shoulder is from zero to 180 degrees, normal abduction is from zero to 180 degrees, and normal internal and external rotation is from zero to 90 degrees. Forward flexion and abduction to 90 degrees amounts to "shoulder level." 38 C.F.R. § 4.71, Plate I (2014).

Diagnostic Code 5202 provides for a 20 percent rating for the major arm if there are infrequent recurrent episodes of dislocation of the scapulohumeral joint with guarding of movement only at the shoulder level, or malunion of the humeral head with moderate deformity. A 30 percent rating is warranted for frequent recurrent episodes of dislocation of the scapulohumeral joint with guarding of all arm movements, or malunion of the humeral head with marked deformity. A 50 percent rating is warranted for the major arm if there is fibrous union of the humerus. A 60 percent rating is warranted for the major arm for nonunion of the humerus, or false flail joint. A maximum 80 percent rating is warranted for the major arm for loss of head of humerus, or flail shoulder. 38 C.F.R. § 4.71a, Diagnostic Code 5202 (2014).

Upon review of the evidence of record, the Board finds that an initial rating of 20 percent for the Veteran's right shoulder bursitis is warranted, effective January 29, 2008, pursuant to Diagnostic Code 5201. Review of the medical evidence concerning limitation of motion of the Veteran's right arm shows that examination during service in November 1996 showed full range of motion, with pain at 90 degrees flexion and abduction. During VA examination in August 2006, right shoulder motion was full, recorded as 180 degrees of forward flexion, 180 degrees of abduction, 90 degrees of internal rotation, 90 degrees of external rotation and 45 degrees of adduction. However, upon January 2008 evaluation by Sutter Medical Group, the Veteran was able to actively elevate the right shoulder to 140 or 150 degrees, and at 90 degrees of abduction he could externally rotate close to 90 degrees with some pain at the extreme. Hence, an increased initial rating of 20 percent for the Veteran's service-connected right (major) shoulder bursitis is warranted pursuant to Diagnostic Code 5201, effective January 29, 2008, (the date of examination by Sutter Medical Group), due to limitation of motion of the right arm at shoulder level. An increased rating of 30 percent is not warranted pursuant to Diagnostic Code 5201, as the Veteran has not shown limitation of motion midway between the side and shoulder level. 

Additionally, an increased initial rating is not for application under Diagnostic Code 5200, because there is no evidence of ankylosis of the scapulohumeral articulation. 

Also, neither Diagnostic Code 5202 nor 5203 are applicable in this case, because the evidence does not reflect either malunion of the humerus or non-union of the clavicle or scapula with loose movement. 

Moreover, an increased rating of 20 percent is not warranted pursuant to Diagnostic Codes 5003 and 5019, because the record does not show X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations. The shoulder is considered a single major joint. Rather, such evaluations are warranted when there is no limitation of motion. In this case, however, the Veteran does have some limitation of motion. Thus, he is not entitled to an increased initial rating. 

While the Board has assigned a staged rating which grants an initial rating of 20 percent effective January 29, 2008, other than this staged rating period, the Board has found no basis upon which to assign an initial rating in excess of 10 percent prior to January 29, 2008, for the Veteran's service-connected bursitis of the right shoulder. To this limited extent only, the Veteran's claim for entitlement to an increased initial rating for his service-connected right (major) shoulder bursitis, with right biceps tendinitis, is granted.

B. Initial Rating in Excess of 20 Percent From January 29, 2008. 

The Board will now address whether an increased initial rating in excess of 20 percent is warranted for the Veteran's service-connected right shoulder bursitis from January 29, 2008. In so doing, the Board will apply the pertinent Diagnostic Code sections of 5200, 5201, 5202, and 5203 to the relevant evidence of record. 

The Board has determined that the Veteran is not entitled to an initial rating in excess of 20 percent since January 29, 2008. An increased evaluation under Diagnostic Code 5200 is not possible, given the lack of evidence of ankylosis of the scapulohumeral articulation. 

In order for entitlement to an increased initial rating of 30 percent for limitation of motion of the right (major) arm pursuant to Diagnostic Code 5201, the evidence would need to show limitation of the arm to midway between the side and shoulder level. Although external rotation was to 30 degrees during May 2010 evaluation by private orthopedist Amber L. Chatwin of Sutter North, external rotation was to 80 degrees 9 days later. Also, upon VA examination in February 2014, right shoulder external rotation was to 60 degrees, with painful motion at 50 degrees. Following repetitive-use testing, right shoulder flexion was to 100 degrees, abduction to 90 degrees, internal rotation to 60 degrees, and external rotation to 50 degrees. There was no decrease in range of motion due to pain. The single instance of limitation of motion which would allow for a rating of 30 percent under DC 5201-external rotation to 30 degrees during May 2010 evaluation by orthopedist Chatwin-was followed 9 days later by external rotation to 50 degrees, which would not support a 30 percent rating under DC 5201 for limitation of motion of the arm to midway between the side and should level (45 degrees). 

Again, an increased initial rating in excess of 20 percent is not for consideration under either Diagnostic Code 5202 or 5203, as the evidence does not reflect either malunion of the humerus or non-union of the clavicle or scapula with loose movement. 

The Board has also considered, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness pursuant to 38 C.F.R. §§ 4.40, 4.45, 4.59 (2014) and DeLuca; 8 Vet. App. at 206-7. The Board acknowledges the Veteran's subjective complaints of pain, weakness, stiffness, fatigue, flare-ups, and limitation of motion. However, the Board finds that the evidence does not show that the Veteran's right shoulder disability warrants an increased initial due to functional loss. The assigned initial rating of 10 percent prior to January 29, 2008, and 20 percent thereafter,, contemplates any functional loss due to pain. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca.

In view of the foregoing, an initial rating in excess of 20 percent from January 29, 2008, for the Veteran's service-connected bursitis of the right shoulder, is not warranted.

IV. Extraschedular Analysis

The Board has considered whether the initial rating appeal warrants referral for consideration of an extraschedular rating under 38 C.F.R. § 3.321. Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, it must be determined whether the disability picture is such that the schedular criteria are inadequate, i.e., whether there are manifestations or impairment that are not encompassed by the schedular criteria. If those criteria are not inadequate, the analysis does not need to proceed any further. 

1. GERD with Hiatal Hernia

The Board finds that the symptomatology and impairment caused by the Veteran's service-connected GERD with hiatal hernia are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The rating criteria found in Diagnostic Code 7346 contemplate the Veteran's symptoms and impairment, and reasonably describe the disability level and symptomatology of his GERD with hiatal hernia, specifically, epigastric distress, dysphasia, pyrosis, and regurgitation, accompanied by substernal arm and shoulder pain. 38 C.F.R. § 4.114, Diagnostic Code 7346. 

2. Left Carpal Tunnel Syndrome

The Board finds that the symptomatology and impairment caused by the Veteran's service-connected left carpal tunnel syndrome are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The rating criteria found in Diagnostic Code 8513 contemplate the Veteran's symptoms and impairment, and reasonably describe the disability level and symptomatology of his left carpal tunnel syndrome, specifically, mild incomplete paralysis of the radial and ulnar nerves. 38 C.F.R. § 4.124a, Diagnostic Code 8513. 

3. Right Shoulder Bursitis with Right Biceps Tendinitis

The Board finds that the symptomatology and impairment caused by the Veteran's service-connected right shoulder bursitis with right biceps tendinitis are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The rating criteria found in Diagnostic Code 5201 contemplate the Veteran's symptoms and impairment, and reasonably describe the disability level and symptomatology of his right shoulder bursitis with right biceps tendinitis, specifically, pain and limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5201. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the Rating Schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 8 C.F.R. § 4.1. In this case, the problems reported by the Veteran regarding the service-connected GERD with hiatal hernia, right shoulder, and left carpal tunnel disabilities are specifically contemplated by the criteria discussed above, including the effect of the Veteran's symptoms on his occupation and daily life. In the absence of exceptional factors associated with the Veteran's disabilities, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b) ] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities present disability not adequately captured by the schedular ratings for the service-connected disabilities.

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

V. TDIU

The Board further finds that the issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) has not been raised by the Veteran or the record in this case. Rice v. Shinseki, 22 Vet. App. 447 (2009); see also Roberson v. Principi, 251 F.3d 1378 (2001). Specifically, the Veteran has not alleged, and the record does not show, that the Veteran is rendered unable to obtain or maintain substantially gainful employment due to his service-connected disabilities. Therefore, a claim for TDIU is not raised, and is not part of this appeal. 


ORDER

For the entire initial rating period on appeal, a 30 percent rating, but not higher, for GERD with hiatal hernia, is granted.

A compensable initial rating prior to February 21, 2014, for left (minor) carpal tunnel syndrome, is denied.

An initial rating in excess of 20 percent since February 21, 2014, for left (minor) carpal tunnel syndrome, is denied.

An initial rating in excess of 10 percent prior to January 29, 2008, for right (major) shoulder bursitis, is denied.

An initial rating in excess of 20 percent since January 29, 2008, for right (major) shoulder bursitis, is denied.


REMAND

Upon review of the evidence of record, the Board has determined that remand of the issues of (1) entitlement to a compensable initial rating for service-connected left knee strain and (2) entitlement to a compensable initial rating for service-connected right knee strain, with history of medial meniscus tear, is necessary in order for clarification of the ratings and effective dates assigned for each disability.

As noted, the November 2007 DRO decision granted service connection and assigned a noncompensable rating effective March 1, 2006, for left and right knee strain. Through a Supplemental Statement of the Case (SSOC) issued in August 2014, the RO granted 10 percent ratings each for left and right knee strain. The 10 percent rating was assigned by the RO based upon February 2014 VA contract examination, viewed in conjunction with 38 C.F.R. § 4.59. The RO assigned the minimum compensable rating of 10 percent for each knee on the basis of painful motion of each knee. No Rating Decision has been issued at any point since August 2014 to implement the 10 percent ratings and assign an effective date for each. 

Nonetheless, in his VA Form 21-4138 received in September 2014, the Veteran (referencing the August 2014 SSOC ("215/uw")) stated: "I would like to thank you for the recent decision to increase my disability rating. I am satisfied with the disability ratings currently assigned. But, it is my belief that the increased rating should have an effective date of the date of the original claim [June 29, 2006]. In many of these conditions, you have assigned the effective date as the date of the last C[ompensation] & P[ension] exam. I feel this is incorrect. " 

Additionally, review of the various correspondence since August 2014 informing the Veteran of his benefit payments reveals that he has been given no notice of any adjustments (if any) to his disability compensation arising from the assignment of compensable ratings for his service-connected left and right knee disabilities. 

Finally, an examination of the Rating Decision code sheets issued since August 2014 (to include the most recent one issued in December 2014) indicates that noncompensable ratings are still assigned for the Veteran's service-connected left and right knee disabilities. A 10 percent rating for each knee, with corresponding effective date, is not reflected as of this date.

Accordingly, the case is REMANDED for the following action:

1. The RO is to issue an implementing Rating Decision assigning a 10 percent rating each for the Veteran's service-connected left knee strain and right knee strain with history of medial meniscus tear (as awarded in the August 2014 SSOC).

2. The RO is then to assign effective dates for the 10 percent ratings assigned the Veteran's left knee strain and right knee strain with history of medial meniscus tear.

3. Finally, the RO is to notify the Veteran of the assignment of the 10 percent ratings and corresponding effective dates for his left knee strain and right knee strain with history of medial meniscus tear, to include notification of any adjustments (if any) to his disability compensation arising from the assignment of 10 percent ratings each for his service-connected left and right knee disabilities. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
R. FEINBERG
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs